UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:                                    Chapter 11

JOHNSTON HOLDINGS 1121 LLC                Case No. 21-16211 (VPP)

      Debtor.

**DECLARATION OF STEPHEN J. TYDE, JR. IN SUPPORT
OF MOTION OF TOORAK CAPITAL PARTNERS TO
DISMISS THE PETITION OR FOR RELIEF FROM
AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D)(2)**

I, Stephen J. Tyde, Jr., declare under penalty of perjury:

1.     I am a Principle – Head of Special Servicing at Toorak Capital Partners, the Trust

Administrator for Normandy Capital Trustee, acting by and through its Trustee, Wilmington

Savings Fund Society, FSB (the "**Lender**").

2.     In my employment, I am responsible for managing and administering the subject

Loan (as defied below). I have access to the business records of Lender, including the business

records for and relating to the Loan. Lender's business records, including the business records for

and relating to the Loan are maintained by Lender in the course of its regularly conducted business

activities and are made at or near the time of the event, by or from information transmitted by a

person with knowledge. It is the regular practice to keep such records in the ordinary course of a

regularly conducted business activity. I make this certification based upon my review of those

records relating to the Loan, my own personal knowledge or how those records are kept and

maintained, and my own personal knowledge of the administration of the Loan.

3.      I submit this declaration (this "**Declaration**") on behalf of Lender in support of the

*Motion of Toorak Capital Partners to Dismiss the Petition or for Relief from the Automatic Stay*

*Pursuant to 11 U.S.C. § 362(d)(1)* (the "**Motion**").

## BACKGROUND

### I.    Loan Documents

4.      On August 9, 2019, SNCO Cap LLC (the "**Original Lender**") and the Borrower

executed a mortgage loan evidenced by the Note in the original principal amount of $981,500.00

(the "**Loan**"). The Loan encumbered the Property and improvements thereon. The Note requires

that the Borrower make monthly payments of interest on the principal amount until August 9, 2020

(the "**Maturity Date**"), when the entire balance of the Loan was due. The Note provides for an

interest rate of 9.50 percent per annum on the basis of a 360-day year and a default interest rate of

24 percent per annum.

5.      To secure payment of the Note, the Borrower executed and delivered that certain

Construction Mortgage dated August 9, 2019 (the "**Mortgage**"). The Mortgage encumbered the

Property, along with all Personal Property (as defined in the Mortgage) (collectively, the

"**Collateral**"). The Mortgage was duly recorded with the County Clerk's Office on August 12,

2019, in Book 7141, Page 582. Original Lender perfected its interest in the Collateral by filing a

Uniform Commercial Code financing statement with the County Clerk's Office on August 12,

2019, in Book 7141, Page 608 (the "**Financing Statement**").

6.      In connection with the Loan, Vereena T. Martin (the "**Guarantor**") executed that

certain Guaranty Agreement, dated August 9, 2019 (the "**Guaranty**", together with the Note, the

Mortgage, the Financing Statement, and all other documents executed in connection with the Loan

or further securing the amounts owed under the Note, the "**Loan Documents**").

7.     The Loan Documents were assigned to Lender pursuant to that Assignment of

Mortgage dated August 28, 2019 (the "**Assignment**") and recorded with the County Clerk's Office

on October 28, 2019, in Book 7162, page 2957.

8.     Lender is the record owner of the Loan and the exclusive holder of the originals of

the Loan Documents which evidence the Loan.

9.     The Borrower stopped making all payments due and owing under the Note in

January 2020, resulting in an Event of Default (as defined in the Loan Documents) to have

occurred as of January 2, 2020. As a result of the Borrower's default under the Loan Documents,

on March 24, 2020, Lender accelerated the remaining principal balance and all accrued interest

due on the Note and imposed the default rate of interest, as permitted by the terms of the Note and

the Loan Agreement.

**II.**     **Foreclosure Action**

10.     On April 8, 2020, Lender commenced the Foreclosure Action. To date, the

Borrower has not filed an appearance or any papers with the State Court in the Foreclosure Action.

11.     On October 16, 2020, the State Court entered the Receiver Order. Among other

things, the Receiver Order gave the Receiver the power to enter upon, receive, and take complete

possession of the Property and the rents, income, and profits generated therefrom (including all

security and other deposits related to the operation of the Property, to administer all proceeds of

the Property in accordance with law, to rehabilitate and manage the completion of construction of

the Property, and to market the Property for sale.

12.     Shortly after his appointment, the Receiver undertook efforts to secure and protect

the Property, which the Borrower had left incomplete and abandoned.  The Receiver also began to

market the Property for sale. The Receiver identified a potential purchaser of the Property and filed

a motion with the State Court to effectuate the sale (the "**Sale Motion**"). The purchase price under

3

the Sale Motion was $670,000. On May 21, 2021, the State Court denied the Sale Motion, finding

that it was premature until a final foreclosure judgment was entered.

13.     On June 24, 2021, Lender filed a motion for final judgment (the "**Final Judgment**

**Motion**") in the State Court and requested entry of default against the Borrower for failure to plead

or otherwise defend the Foreclosure Action. A copy of the Final Judgment Motion, including my

certification supporting the Final Judgment Motion, is attached hereto as Exhibit 1.

14.     On July 19, 2021, the State Court granted Lender's motion for final judgment.  A

copy of the Final Judgment is attached hereto as Exhibit 2.

**III.     The Chapter 11 Case**

15.     Instead of responding to any of Lender's pleadings in the Foreclosure Action, the

Chapter 11 Case was filed on August 2, 2021 (the "**Petition Date**").

16.     As of the Petition Date, the following amounts are due and owing to Lender under

the Loan Documents: principal in the amount of $891,230.00; regular interest in the amount of

$141,602.31; default interest in the amount of $205,329.60; additional fees in the amount of

$95,019.97; and all other fees and costs incurred by Lender, including, without limitation, any

sums incurred by Lender for taxes, insurance and title search fees, together with attorneys' fees,

incurred in connection with

I certify under penalty of perjury under the laws of the United States that, to the best of my

knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 14th day of September 2021          **Toorak Capital Partners, LLC**
Tampa, Florida

                                                  /s/     Draft
                                                  Stephen J. Tyde, Jr.

**Exhibit 1**

Final Judgment Motion

POLSINELLI PC
Aaron P. Davis, Esq. (251102019)
600 Third Avenue, 40th Floor
New York, New York 10016
Phone: (212) 803.9918
adavis@polsinelli.com
*Attorneys for Plaintiff Normandy Capital Trust,*
*by and through its Trustee, Wilmington Savings*
*Fund Society, FSB*

| | |
|---|---|
| NORMANDY CAPITAL TRUST, by and through its Trustee, WILMINGTON SAVINGS FUND SOCIETY, FSB, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSTON HOLDING 1121 LLC, a New Jersey Limited Liability Company, and ARYMING ASSET FUNDING, LLC, a New Jersey limited liability company, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: SOMERSET COUNTY <br><br> Docket No. SWC-F-005334-20 <br><br> CIVIL ACTION <br><br> ***NOTICE OF MOTION FOR FINAL JUDGMENT IN FORECLOSURE*** |

**TO:**   Johnston Holdings 1121 LLC
1121 Johnston Drive
Watchung, New Jersey 07069

Aryming Asset Funding, LLC
24 Commerce Street, Suite 606
Newark, New Jersey 07102

**SIR OR MADAM**:

**PLEASE TAKE NOTICE** that the undersigned attorneys for plaintiff Normandy Capital Trust, by and through its Trustee, Wilmington Savings Fund Society, FSB, shall apply to the Superior Court of New Jersey, Chancery Division, Office of Foreclosure, with an address at P.O. Box 971, 25 West Market Street, Trenton, New Jersey 08625, for the entry of judgment in this action in favor of the plaintiff for the relief demanded in the complaint and shall file the proof required by R. 4:64-2.

**PLEASE TAKE FURTHER NOTICE** that pursuant to R. 1:34-6 and R. 4:64-9, judgment will be entered in the discretion of the Court unless the attorney or *pro se* party on whom it has been served notifies the Office of Foreclosure and the attorney for the moving party, in writing, within ten (10) days after the date of service of the motion, that it objects to the entry of judgment. The Office of Foreclosure is located at P.O. Box 971, 25 West Market Street, Trenton, New Jersey 08625. The basis of your objection to entry of judgment must be stated with specificity. Upon receipt of a specific objection or at the direction of the court, the Office of Foreclosure shall deliver the foreclosure case file to the appropriate vicinage judge for scheduling of further proceedings and who shall notify the parties or their attorneys of the time and place thereof.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU WANT TO OBJECT TO THE CALCULATION OF AMOUNT DUE, YOU MUST DO SO IN WRITING WITHIN 10 DAYS AFTER THE DAY YOU RECEIVED THIS MOTION. ANY OBJECTION TO THE CALCULATION OF THE AMOUNT DUE MUST ADDRESS AND DETAIL WITH SPECIFICITY THE BASIS OF THE OBJECTION TO THE AMOUNT DUE. YOU MUST FILE YOUR OBJECTION WITH THE OFFICE OF FORECLOSURE, P.O. BOX 971, 25 MARKET STREET, TRENTON, NEW JERSEY 08625, AND SERVE A COPY ON THE MOVING PARTY. THE OFFICE OF FORECLOSURE DOES NOT CONDUCT HEARINGS. YOUR PERSONAL APPEARANCE AT THE OFFICE WILL NOT QUALIFY AS AN OBJECTION. IF YOU FILE A SPECIFIC OBJECTION TO THE CALCULATION OF THE AMOUNT DUE, ON RECEIPT OF A SPECIFIC OBJECTION TO THE CALCULATION OF THE AMOUNT DUE PURSUANT TO *R*. 4:64-1(d)(1)(A), THE OFFICE OF FORECLOSURE SHALL REFER THE MATTER TO THE JUDGE IN THE COUNTY OF VENUE, WHO SHALL SCHEDULE SUCH FURTHER**

**PROCEEDINGS AND NOTIFY THE PARTIES OR THEIR ATTORNEYS OF THE TIME**

**AND PLACE THEREOF**.

POLSINELLI PC

*Attorneys for Plaintiff*

By:    *Aaron P. Davis*
            AARON P. DAVIS

Dated:  June 24, 2021

## CERTIFICATION OF SERVICE

Megan Klein, does hereby certify that:

      1.      I am a paralegal employed by the law firm of POLSINELLI PC.  On June 24, 2021, I mailed a copy of the within Request for Entry of Default, Certification of Aaron P. Davis, Esq. in support of the Request for Entry of Default; Notice of Motion for Final Judgment in Foreclosure; Certification of Amount Owed; Certification of Fees and Costs; Certification of Attorneys' Fees; proposed Final Judgment in Foreclosure; and proposed Writ of Execution, via Certified Mail, R.R.R. and Regular Mail, to the Defendants at the following addresses.

      Johnston Holdings 1121 LLC
      1121 Johnston Drive
      Watchung, New Jersey 07069

      Aryming Asset Funding, LLC
      24 Commerce Street, Suite 606
      Newark, New Jersey 07102

      I hereby certify that the foregoing statements made by me are true.  I am aware that if any statements made by me are willfully false, I am subject to punishment.

                        /s/ Megan Klein
                        Megan Klein

Dated:  June 24, 2021

POLSINELLI PC
Aaron P. Davis, Esq. (251102019)
600 Third Avenue, 42nd Floor
New York, New York 10016
Phone: (212) 803.9918
adavis@polsinelli.com
*Attorneys for Plaintiff Normandy Capital Trust,*
*by and through its Trustee, Wilmington Savings*
*Fund Society, FSB*

| | |
|---|---|
| NORMANDY CAPITAL TRUST, by and through its Trustee, Wilmington Savings Fund Society, FSB,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSTON HOLDING 1121 LLC, a New Jersey limited liability company and ARYMING ASSET FUNDING, LLC, a New Jersey limited liability company,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: SOMERSET COUNTY<br><br>Docket No. SWC-F-005334-20<br><br>CIVIL ACTION<br><br>***CLIENT CERTIFICATION IN SUPPORT OF MOTION FOR FINAL JUDGMENT*** |

I, STEPHEN TYDE, of full age, do hereby certify and say:

1.     I am a Principle – Head of Special Servicing at Toorak Capital Partners, LLC. Toorak serves as the Trust Administrator for Wilmington Savings Fund Society, FSB, as Trustee for Normandy Capital Trust ("Lender" or "Plaintiff"). Plaintiff is the owner and holder of the Loan secured by the Mortgaged Premises (as such terms are hereinafter defined).

2.     In my employment, I am responsible for managing and administering the subject Mortgage Loan, which is more particularly described below and in the Complaint in Foreclosure filed in this action. I have access to the business records of Plaintiff, including the business records for and relating to the subject Mortgage Loan. Plaintiff's business records, including the business records for and relating to the Mortgage Loan are maintained by Plaintiff in the course of its regularly conducted business activities and are made at or near the time of the event, by or from

information transmitted by a person with knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity. I make this certification based upon my review of those records relating to the Mortgage Loan, my own personal knowledge of how those records are kept and maintained, and my own personal knowledge of the administration of the Mortgage Loan.

3.      I make this Certification in support of Plaintiff's motion for entry of final judgment in foreclosure. I am authorized by Plaintiff to make this Certification.

4.      In this action, Plaintiff seeks to foreclose a mortgage in the original principal amount of $981,500.00, encumbering certain real property and improvements thereon located at 1121 Johnston Drive, Watchung, New Jersey, and also known as Lot 2 in Block 7403 on the Tax Map of Watchung, and as more particularly described on Schedule A annexed to the Complaint in Foreclosure (the "Mortgaged Premises"). As demonstrated below, the mortgagor in this case, defendant Johnston Holdings 1121 LLC ("Borrower") defaulted under the subject promissory note and the subject mortgage by failing to repay the amounts owed thereunder for January, February and March 2020.

5.      On August 9, 2019, Borrower entered into the Mortgage Loan, which was evidenced by a certain Commercial Promissory Note dated August 9, 2019 in the original principal amount of $981,500.00 (the "Note"). A true and original copy of the Note is attached hereto as **Exhibit A**. All principal, interest and other fees due under the Note and Loan Agreement were to become due and payable on August 20, 2020 (the "Maturity Date"). The Note provides for interest at a rate of nine and a half (9.50%) percent per annum, on the basis of a 360-day year.

6.      The indebtedness owed under the Note is secured by a certain Construction Mortgage dated August 9, 2019 (the "Mortgage") from Borrower. A true and original copy of the

2

Mortgage is attached hereto as **Exhibit B**.  The Mortgage encumbers the Mortgaged Premises and was duly recorded with the County Clerk's Office on August 12, 2019, in Book 7141, Page 582.

7.      The Mortgage includes a security agreement creating a security interest in certain property (collectively, the "**Collateral**"), defined as Personal Property in the Mortgage.  Lender perfected its interest in the Collateral by filing a Uniform Commercial Code Financing Statement (the "**UCC**") with the County Clerk's Office on August 12, 2019, in Book 7141, Page 608.  A true and original copy of the UCC is attached hereto as **Exhibit C**.

8.      The Note, the Mortgage and all other documents executed in connection with or further securing the amounts owed under the Note were later assigned to Plaintiff, as evidenced by that certain Assignment of Mortgage from Original Lender to Lender dated August 28, 2019 and recorded with the County Clerk's Office on October 28, 2019, in Book 7162, page 2957.  A true and original copy of the Assignment of Mortgage is attached hereto as **Exhibit D**.

9.      Borrower failed to repay the amounts owed under the Note for the months of January, February and March 2020.  As a result of the Borrower's default under the Note and the Mortgage, Plaintiff initiated this foreclosure action.

10.      Based on my own personal knowledge and my review of the books and business records concerning the Mortgage Loan, I attest that Defendant's default under the Note and the Mortgage remains uncured and there is due to Plaintiff from Defendant the sum of $1,090,427.49 as set forth in the Proof of Amount Due annexed hereto, less any amounts that may be held in reserve by Plaintiff.  I have reviewed all entries and calculations, and they are correct.  *Per diem* interest, as set forth in the annexed schedule, will accrue on the principal amount owed on the Note from June 16, 2021.

11.      The amounts owed includes the following:

      a.      A default interest charge of five (5%) percent, an amount that is the lesser of the maximum rate permitted by applicable law. Pursuant to the terms of the Note Plaintiff has the right to collect up to 9.50% in regular interest plus an additional 14.5% in default interest under the Note, but has elected to seek only an additional five (5%) percent in default interest in connection with its motion for final judgment in foreclosure. The default interest amount is calculated based on the first date of default of January 2, 2020, at a rate of 5% per annum based on a 360-day year, as detailed in the Schedule of Amounts Owed attached hereto.

      b.      Pursuant to the terms of the Note, Lender is entitled to charge a late fee of five (5%) percent of any payment required under the Note which is not paid on the date such payment is due.  Thus, Lender is charging a late fee for the months of January, February and March, 2020.

12.      The Mortgaged Premises in this action cannot be divided and should be sold as a single tract.

13.      There are no just debts, set-offs, credits or allowances due or to become due from Plaintiff to Defendant, other than those set forth herein.

14.      Plaintiff is the owner and holder of the Note, the Mortgage and the other Loan Documents evidencing Defendant's indebtedness, and is entitled to enforce said Note and the Mortgage. I certify that the Exhibits of the Loan Documents annexed hereto are each and all true and correct copies of same and each evidence Plaintiff's entitlement to collect the amounts owed as stated herein.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

STEPHEN TYDE
Toorak Capital Partners, LLC

Dated: June 24th, 2021

## Amount Due Schedule

Note Dated:            August 9, 2019
Mortgage Dated:        August 9, 2019
Recorded on:           August 12, 2019
Property Address:      1121 Johnston Drive, Watchung, New Jersey
Mortgage Holder:       Normandy Capital Trust, by and through its Trustee, Wilmington Savings
                       Fund Society, FSB

### STATEMENT OF AMOUNT DUE

(1)    Unpaid Principal Balance as of June 15, 2021:              $891,230.00

(2)    Interest (12/1/19-6/15/21)
       (Interest rate = 9.50%/year; $235.19/day x 563 days):     $132,411.97

(3)    Default Interest: (1/2/20-6/15/21)
       (Default interest rate = 5%/year; $123.78/day x 531 days):  $65,727.18

(4)    Late Fees Due on Default: (February 2021)
       (Unpaid Principal × 9.50% ÷ 12 Months × 5% × 3 (Late) Months): $1,058.34


**TOTAL DUE AS OF JUNE 15, 2021:**                    **$1,090,427.49**

        Surplus Money: If after the sale and satisfaction of the mortgage debt, including costs and
expenses, there remains any surplus money, the money will be deposited into the Superior Court
Trust Fund and any person claiming the surplus, or any part thereof, may file a motion pursuant
to Court Rules 4:64-3 and 4:57-2 stating the nature and extent of that person's claim and asking
for an order directing payment of the surplus money.  The Sheriff or other person conducting the
sale will have information regarding the surplus, if any.

                                        STEPHEN TYDE

78497905

POLSINELLI PC
Aaron P. Davis, Esq. (251102019)
600 Third Avenue, 40th Floor
New York, New York 10016
Phone: (212) 803.9918
adavis@polsinelli.com
*Attorneys for Plaintiff Normandy Capital Trust,*
*by and through its Trustee, Wilmington Savings*
*Fund Society, FSB*

| | |
|---|---|
| NORMANDY CAPITAL TRUST, by and through its Trustee, WILMINGTON SAVINGS FUND SOCIETY, FSB, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSTON HOLDING 1121 LLC, a New Jersey limited liability company and ARYMING ASSET FUNDING, LLC, a New Jersey limited liability company, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: SOMERSET COUNTY <br><br> Docket No. SWC-F-005334-20 <br><br> CIVIL ACTION <br><br> ***CERTIFICATION OF FEES AND COSTS*** |

I, AARON P. DAVIS, ESQ., of full age, do hereby certify and say:

1.      I am an attorney duly admitted to practice law in the State of New Jersey and an associate with the law firm POLSINELLI PC, attorneys for plaintiff Normandy Capital Trust, by and through its Trustee, Wilmington Savings Fund Society, FSB ("Plaintiff").  I am responsible for litigating the above-captioned action on Plaintiff's behalf and have personal knowledge of the facts set forth herein. I am authorized to make the instant Certification on Plaintiff's behalf in this case.

2.      The total amount of fees and charges expended in this foreclosure for which taxation is asked is the sum of $2,235.60. The aforementioned sum includes only such fees and charges as were actually and necessarily paid or incurred for the purpose of this action, and are reasonable in amount.  This sum does not exceed the fees allowed by law.

3.      The following is an itemized schedule of such fees and charges:

| | |
|---|---|
| Statutory Fees: | $50.00 |
| Fee for filing Complaint: | $405.00 |
| Fee for recording Lis Pendens: | $86.90 |
| Title and Judgment Searches: (First Jersey Title Services, Inc.) | $390.00 |
| Fees paid to Process Server: | $845.10 |
| Fee for Writ of Execution: | $10.00 |
| Fees for CSC Properties (vacancy report): | $448.60 |
| **Total:** | $2,235.60 |

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*Aaron P. Davis*
AARON P. DAVIS

Dated: June 24, 2021

POLSINELLI PC
Aaron P. Davis, Esq. (251102019)
600 Third Avenue, 40th Floor
New York, New York 10016
Phone: (212) 803.9918
adavis@polsinelli.com
*Attorneys for Plaintiff Normandy Capital Trust,*
*by and through its Trustee, Wilmington Savings*
*Fund Society, FSB*

| | |
|---|---|
| NORMANDY CAPITAL TRUST, by and through its Trustee, WILMINGTON SAVINGS FUND SOCIETY, FSB, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSTON HOLDING 1121 LLC, a New Jersey Limited Liability Company, and ARYMING ASSET FUNDING, LLC, a New Jersey limited liability company, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: SOMERSET COUNTY <br><br> Docket No. SWC-F-005334-20 <br><br> CIVIL ACTION <br><br> ***NOTICE OF MOTION FOR FINAL JUDGMENT IN FORECLOSURE*** |

**TO:**   Johnston Holdings 1121 LLC
1121 Johnston Drive
Watchung, New Jersey 07069

Aryming Asset Funding, LLC
24 Commerce Street, Suite 606
Newark, New Jersey 07102

**SIR OR MADAM**:

**PLEASE TAKE NOTICE** that the undersigned attorneys for plaintiff Normandy Capital

Trust, by and through its Trustee, Wilmington Savings Fund Society, FSB, shall apply to the

Superior Court of New Jersey, Chancery Division, Office of Foreclosure, with an address at P.O.

Box 971, 25 West Market Street, Trenton, New Jersey 08625, for the entry of judgment in this

action in favor of the plaintiff for the relief demanded in the complaint and shall file the proof

required by R. 4:64-2.

**PLEASE TAKE FURTHER NOTICE** that pursuant to R. 1:34-6 and R. 4:64-9, judgment will be entered in the discretion of the Court unless the attorney or *pro se* party on whom it has been served notifies the Office of Foreclosure and the attorney for the moving party, in writing, within ten (10) days after the date of service of the motion, that it objects to the entry of judgment. The Office of Foreclosure is located at P.O. Box 971, 25 West Market Street, Trenton, New Jersey 08625. The basis of your objection to entry of judgment must be stated with specificity. Upon receipt of a specific objection or at the direction of the court, the Office of Foreclosure shall deliver the foreclosure case file to the appropriate vicinage judge for scheduling of further proceedings and who shall notify the parties or their attorneys of the time and place thereof.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU WANT TO OBJECT TO THE CALCULATION OF AMOUNT DUE, YOU MUST DO SO IN WRITING WITHIN 10 DAYS AFTER THE DAY YOU RECEIVED THIS MOTION. ANY OBJECTION TO THE CALCULATION OF THE AMOUNT DUE MUST ADDRESS AND DETAIL WITH SPECIFICITY THE BASIS OF THE OBJECTION TO THE AMOUNT DUE. YOU MUST FILE YOUR OBJECTION WITH THE OFFICE OF FORECLOSURE, P.O. BOX 971, 25 MARKET STREET, TRENTON, NEW JERSEY 08625, AND SERVE A COPY ON THE MOVING PARTY. THE OFFICE OF FORECLOSURE DOES NOT CONDUCT HEARINGS. YOUR PERSONAL APPEARANCE AT THE OFFICE WILL NOT QUALIFY AS AN OBJECTION. IF YOU FILE A SPECIFIC OBJECTION TO THE CALCULATION OF THE AMOUNT DUE, ON RECEIPT OF A SPECIFIC OBJECTION TO THE CALCULATION OF THE AMOUNT DUE PURSUANT TO *R*. 4:64-1(d)(1)(A), THE OFFICE OF FORECLOSURE SHALL REFER THE MATTER TO THE JUDGE IN THE COUNTY OF VENUE, WHO SHALL SCHEDULE SUCH FURTHER**

**PROCEEDINGS AND NOTIFY THE PARTIES OR THEIR ATTORNEYS OF THE TIME**

**AND PLACE THEREOF**.

 

 

POLSINELLI PC

*Attorneys for Plaintiff*

By:   <u>*Aaron P. Davis*</u>
        AARON P. DAVIS

 

Dated:  June 24, 2021

## CERTIFICATION OF SERVICE

Megan Klein, does hereby certify that:

1.      I am a paralegal employed by the law firm of POLSINELLI PC.  On June 24, 2021, I mailed a copy of the within Request for Entry of Default, Certification of Aaron P. Davis, Esq. in support of the Request for Entry of Default; Notice of Motion for Final Judgment in Foreclosure; Certification of Amount Owed; Certification of Fees and Costs; Certification of Attorneys' Fees; proposed Final Judgment in Foreclosure; and proposed Writ of Execution, via Certified Mail, R.R.R. and Regular Mail, to the Defendants at the following addresses.

> Johnston Holdings 1121 LLC
> 1121 Johnston Drive
> Watchung, New Jersey 07069
>
> Aryming Asset Funding, LLC
> 24 Commerce Street, Suite 606
> Newark, New Jersey 07102

I hereby certify that the foregoing statements made by me are true.  I am aware that if any statements made by me are willfully false, I am subject to punishment.


                                              /s/ Megan Klein
                                              Megan Klein

Dated:  June 24, 2021

# EXHIBIT C

## CONSTRUCTION MORTGAGE

**DATED:**   August 9, 2019

**BORROWER:**  Johnston Holdings 1121 L.L.C.
       1121 Johnston Drive, Watchung, New Jersey 07069

**LENDER:**   SNCO CAP LLC
       40 Penn Street
       Brooklyn, NY 11249

**PROPERTY:**  Lot 2 in Block 7403, on the official tax map of the Borough of Watchung, County of
       Somerset, State of New Jersey and commonly known as 1121 Johnston Drive,
       Watchung, New Jersey 07069.

**LOAN AMOUNT:** $981,500.00.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

  Borrower or Grantor The word "Borrower" or "Grantor" means Johnston Holdings 1121 L.L.C. and includes all co-signers and co-makers signing the Note.

  **Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

  **Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the New Jersey Industrial Site Recovery Act, NJSA Section 13:1K-6 ("ISRA"), the New Jersey Spill Compensation and Control Act, NJSA 58:10-23.11, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

  **Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

  **Grantor.** The word "Grantor" means Johnston Holdings 1121 L.L.C..

  **Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

  **Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

  **Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

Lender: The word "Lender" means SNCO CAP LLC, its successors and/or assigns.

Mortgage. The word "Mortgage" means this Mortgage between Grantor and Lender.

Note. The word "Note" means the promissory note dated August 9, 2019, in the original principal amount of $981,500.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancing of, consolidations of, and substitutions for the promissory note or agreement.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

THIS MORTGAGE dated August 9, 2019, is made and executed between Johnston Holdings 1121 L.L.C., whose address is set forth above (referred to below as "Grantor") and SNCO CAP LLC, its successors and/or assigns (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in the County of Somerset, State of New Jersey:
Real Property commonly known as:

Lot 2 Block 7403 on the official tax map of the  Borough of Watchung, County of Somerset, State of New Jersey and commonly known as 1121 Johnston Drive, Watchung, New Jersey 07069.

(Legal description attached)

This Construction Mortgage is a valid purchase money first mortgage on the subject property. This is a first purchase money mortgage, the consideration for which constitutes a portion of the purchase price for this property.

CONSTRUCTION MORTGAGE. This Mortgage is a "construction mortgage" for the purposes of Sections 9-334 and 2A:309 of the Uniform Commercial Code, as those sections have been adopted by the State of New Jersey.

ABSOLUTE UNCONDITIONAL PRESENT ASSIGNMENT OF RENTS AND LEASES: Grantor presently assigns to Lender, as further security for the payment of the indebtedness secured hereby, all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property, including but not limited to the rents, issues and profits of the Premises, together with all leases and other documents evidencing such rents, issues and profits now or hereafter in effect and any and all deposits held as security under said leases, and shall, upon demand, deliver to the Lender an executed counterpart of each such lease or other document. Nothing contained in the foregoing sentence shall be construed to bind the Lender to the performance of any of the covenants, conditions or provisions contained in any such lease or other document or otherwise to impose any obligation on the Lender (including, without limitation, any liability under the covenant of quiet enjoyment contained in any lease in the event that any tenant shall have been joined as a party defendant in any action to foreclose this Mortgage and shall have been barred and foreclosed thereby of all right, title and interest and equity of redemption in the Premises), except that the Lender shall be accountable for any money actually received pursuant to such assignment. The Grantor hereby further grants to the Lender the right (a) to enter upon and take possession of the Premises for the purpose of collecting the said rents, issues and profits; (b) to dispossess by the usual summary proceedings any tenant defaulting in the payment thereof to the Lender; (c) to let the Premises, or any part thereof, and (d) to apply said rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. Such assignment and grant shall continue in effect until the indebtedness secured by this Mortgage is paid, the execution of this Mortgage constituting and evidencing the irrevocable consent of the Grantor to the entry upon and taking possession of the Premises by the Lender pursuant to such grant, whether foreclosure has been instituted or not and without applying for a receiver. The Lender, however, grants to the Grantor a license to collect and receive the rents, issues and profits of the Premises until the occurrence of a default by the Grantor under any of the covenants, conditions or agreements contained in this Mortgage. The Grantor agrees to hold said rents, issues and profits as a trust fund for the benefit of the Lender and to apply the same as required by the Lender in payment of principal and interest becoming due on this Mortgage and in payment of taxes, assessments, water rates, sewer rents and carrying charges becoming due against the Premises. Such license of the Grantor to collect and receive said rents, issues and profits may be revoked by the Lender upon any such default by the Grantor without notice to the Grantor of such revocation. In the event of any default under this Mortgage, the Grantor will pay monthly in advance to the Lender, on its entry into possession pursuant to the foregoing grant, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of the Premises or of such part thereof as may be in the possession of the Grantor, and upon default in any such payment will vacate and surrender the possession of the Premises or such part thereof, as the case may be, to the Lender or to such receiver, and, in default thereof, may be evicted by summary proceedings. The Grantor shall not enter into any lease for all or any portion of the Premises without the prior written consent of the Lender.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance with Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans with Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole

opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

CONSTRUCTION LOAN. If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Mortgage shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

Right to Contest. Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $5,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

No Claim for Credit for Taxes. Grantor shall not make deduction from or claim credit on the principal or interest secured by this Mortgage by reason of any governmental taxes, assessments or charges. Grantor shall not claim any deduction from the taxable value of the Property by reason of this Mortgage.

PROPERTY DAMAGE INSURANCE. The following provisions relating to insuring the Property are a part of this Mortgage:

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard Lender clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insured's in such liability

insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. The Real Property is or will be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, payer reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance. Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance with Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

CONDEMNATION. The following provisions relating to condemnation proceedings are a part of this Mortgage:
Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES. The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

Current Taxes, Fees and Charges. Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Use section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

FURTHER ASSURANCES; ATTORNEY-IN-FACT. The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

FULL PERFORMANCE. If Grantor pays all the indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

EVENTS OF DEFAULT. Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

Payment Default. Grantor fails to make any payment when due under the Note.

Default on Other Payments. Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

Other Defaults. Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor, or there occurs an event of default under any Related Document.

Default In Favor of Third Parties. Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability

to perform Grantor's obligations under this Mortgage or any Related Document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any Related Documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any Member withdraws in the event of a corporation, or any member withdraws in the event of a limited liability company or any other termination of Grantor's existence as a going business or the death of any Member or member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Transfer of Property.** Sale, transfer, hypothecation, assignment, or conveyance of the Property or the Improvements or any portion thereof or interest therein without Lender's prior written consent.

**Change in Ownership.** Any issuance or transfer of stock, partnership interests or membership interests (as applicable) in Grantor or any Guarantor, if Grantor or such other Guarantor is a corporation, partnership or limited liability company, without the prior written consent of Lender.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

RIGHTS AND REMEDIES ON DEFAULT. Upon the occurrence of an Event of Default and at any time thereafter,

Lender, at Lender's option, may exercise anyone or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, subject to any notice or right to cure requirements that may be applicable, to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Lender in Possession.** Upon acceleration of the Indebtedness or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the Rents, including those past due. Any Rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of Rents, including but not limited to receiver's fees, premiums on the receiver's bonds and reasonable attorneys' fees and then to the other Indebtedness secured by this Mortgage.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Leases and Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Non-judicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage, the Note, any other Related Document, or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshaled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness. No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. No delay or omission of Lender to exercise any right or power accruing upon any Event of Default shall impair any such right or power, or shall be construed to be a waiver of any such Event of Default or any acquiescence therein; and every power and remedy given by this Mortgage to Lender may be exercised from time to time as often as may be deemed expedient by Lender. Nothing in this Mortgage or in the Note shall affect the obligation of Mortgagor to pay the principal of, and interest on, the Note in the manner and at the time and place therein respectively expressed.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services the cost of searching records, obtaining title commitments and for the costs of title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by facsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**COMMITMENT TO SURVIVE THE CLOSING.** The parties hereto agree that this commitment and the conditions herein shall survive the Closing and that each and every one of the obligations and undertakings of the Borrower and any guarantor named herein shall be continuing obligations and undertakings and shall not cease and desist until the entire Loan, together with all interest and fees due herein and any other amounts which may accrue pursuant hereto and/or to the Loan Documents executed pursuant thereto, shall have been paid in full and until all obligations and undertakings of the Borrower and said Guarantor shall have been fully completed and discharged.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Periodic Reports. If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Caption Headings. Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

Governing Law. This Mortgage will be governed by the laws of the State of New Jersey without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of New Jersey.

Choice of Venue. If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Somerset County, State of New Jersey.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Severability. If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

Non-Liability of Lender. The relationship between Grantor and Lender created by this Mortgage is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor.

Merger. There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Successors and Assigns. Subject to any limitations stated in this Mortgage on transfer of Grantor's Interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

Time Is of the Essence. Time is of the essence in the performance of this Mortgage.

Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

Grantor will not make deduction from or claim credit on the principal or interest secured by this Mortgage by reason of any governmental taxes, assessments or charges. Grantor will not claim any deduction from the taxable value of the subject property by reason of this Mortgage.

This Mortgage secures a loan which by its terms is subject to modification as defined in N.J.S.A. 46:9-8.1.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS. GRANTOR ACKNOWLEDGES RECEIPT, WITHOUT CHARGE, OF A TRUE AND CORRECT COPY OF THIS MORTGAGE. THIS COMMERCIAL MORTGAGE IS DATED August 9, 2019.

GRANTOR:

Johnston Holdings 1121 L.L.C.

BY: _____
Vareena T Martin, Sole Member

STATE OF NEW JERSEY
COUNTY OF Passaic

I CERTIFY that on August 9, 2019 Vareena T Martin personally came before me and acknowledged under oath, to my satisfaction, that he/she was the maker of the attached instrument; was authorized to and did execute this instrument as the sole Member of Johnston Holdings 1121 L.L.C., the entity named in this instrument; and executed this instrument as the act of the entity named in this instrument.

_____
Notary Public of the State of New Jersey

Record and Return to:

SNCO CAP LLC
40 Penn Street
Brooklyn, NY 11249

ALEXANDRA H. COOK
NOTARY PUBLIC OF NEW JERSEY
Comm. # 2386484
My Commission Expires 5/7/2024

$981,500.00

## Commercial Promissory Note

North Haledon, New Jersey

This Commercial Promissory Note (this "Note") dated this 9th day of August 2019 made by Johnston Holdings 1121 L.L.C., a New Jersey Limited Liability Company with an address at 1121 Johnston Drive, Watchung, New Jersey 07069 ("Maker"), to and for the benefit of SNCO CAP LLC ("Payee") with an address at 40 Penn Street, Brooklyn, NY 11249.

FOR VALUE RECEIVED, Maker hereby promises to pay to the order of SNCO CAP LLC ("Payee"), the principal amount of Nine Hundred Eighty One Thousand Five Hundred and No/100  ($981,500.00) Dollars ("Principal Amount") in legal tender of the United States on the Maturity Date, together with all accrued and unpaid interest thereon and any other amounts due under this Note and under any other Loan Documents (as hereinafter defined), calculated in the manner hereinafter set froth from and including the date of this Note to the date this Note is paid in full, as follows:

A.      On the date hereof, interest on the outstanding Principal Amount of this Note from the date hereof to August 31, 2019, at the Interest Rate to be computed on the basis of a 360-day year for the actual number of days elapsed.

B.      Thereafter, interest only at the Interest Rate on the outstanding Principal Balance shall be due monthly and shall be paid monthly in arrears, commencing on October 1, 2019 and monthly thereafter on the first (1st) day of each month until the Maturity Date (each such monthly payment, a "Monthly Payment").

C.      Thereafter, on the Maturity Date, the entire outstanding Principal Balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the holder of this Note (whether pursuant to this Note, the Mortgage or Other Security Documents (as hereinafter defined) shall become due and payable.

D.      In the event of any default by Maker in its obligations hereunder, under the Mortgage and/or any of the other Security Documents securing payment of this loan, interest shall accrue at the "Involuntary Rate" (as defined below).

For the purposes of this Note, these terms shall be defined as follows:

1.      The term "Debt" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Mortgage or Other Security Documents.

2.      The term "Interest Rate" as used in this Note shall mean interest at the annual rate equal to Nine and One Half percent (9.50%) per annum, from the date of this Note to the Maturity Date.

3.      The term "Maturity Date" as used in this Note shall mean the earliest of (i) August 9, 2020, or (ii) such sooner date, by acceleration, upon the sale of the real property that secures this Note or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

4.      The term "Mortgage" shall mean that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith in the Principal Amount encumbering premises located at **1121 Johnston Drive, Watchung, New Jersey 07069**.

5.      The term "Other Security Documents" shall mean any of the documents other than this Note or the Mortgage, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the Loan.

6.      The term "Principal Balance" shall mean the outstanding principal balance of this Note from time to time.

The principal balance of this Note may be prepaid, in whole or in part, upon: (i) not less than ten (10) days prior written notice to Payee specifying the date on which prepayment is to be made (the "Prepayment Date"); (ii) payment of all accrued and unpaid interest on the amount of the Principal Balance of this Note being prepaid to and including the Prepayment Date; and (iii) payment of all other sums then due under this Note, the Mortgage (as hereinafter defined) and the other Loan Documents. If any such notice of prepayment is given, the amount of the principal balance of this Note being prepaid and the other sums required herein shall be due and payable on the Prepayment Date.

Notwithstanding, Maker shall not prepay in whole or in part the Principal Amount prior to November 9, 2019. In the event Maker prepays, in whole or in part, any portion of the principal sum outstanding on this Note prior to November 9, 2019 Maker shall pay to Payee prepayment fee in the amount equal to interest on the principal sum so prepaid from the date of prepayment to November 9, 2019. There shall be no penalty for prepayment after November 9, 2019.

Notwithstanding any other provision of this Note, all payments made hereunder shall be applied first to payment of interest on the principal balance outstanding hereunder from time to time, secondly, to sums payable hereunder or under the Mortgage other than interest and principal, as Payee may determine in its sole discretion, and thirdly to reduction of the Principal Balance.

A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 1:00 p.m. (New Jersey time) on such day. Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a business day, such payment shall instead be due on the next succeeding business day. If any installment of principal, interest or other sums due hereunder or under the Mortgage or any Other Security Document are not paid on the date on which same are due, in addition to any other sums due and owing, the Maker shall pay to the Payee a late charge of Five percent (5%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee.

This Note is secured by ( i ) the Mortgage and (ii) a Personal Guaranty, dated as of the date hereof, by **Vareena T Martin** in favor of Payee (the "Guaranty") and (iii) the Other Security Documents. The Mortgage, in addition to those contained in this Note, specifies various defaults  upon the happening of which all sums owing on this Note may, at the option of Payee, be declared  immediately due and payable.

A default on any other Mortgage or Note executed by Maker to Payee shall constitute a default on this Note whether previously executed or executed thereafter. A default by any entities that have any of the same principals of Maker, on any other Mortgage or Note executed to and in favor of Payee, its successors and/or assigns, shall constitute a default on this Note whether previously executed or executed thereafter. A default by any entity in which **Vareena T Martin** is a principal, on any other Mortgage or Note executed to and in favor of Payee, its successors and/or assigns, shall constitute a default on this Note whether previously executed or executed thereafter. In the event of any such default, all sums due on this and each separate Note will be immediately due and payable in full.

As used herein, the term "Loan Documents" means, collectively, this Note, the Mortgage, the Guaranty, the Other Security Documents and any and all other documents executed or delivered in connection with the loan.

From and after the Maturity Date and·from and after any Event of Default (hereinafter defined) by Maker in its obligations hereunder or any of the Loan Documents, this Note shall bear interest at a rate equal to twenty four percent (24%) per annum or the highest rate allowed by law ("Involuntary Rate") whichever is less. Such interest shall be due and payable to Payee on demand.

Maker agrees that it shall be bound by any agreement extending the time or modifying the above terms

of payment, made by Payee and the then owners of the property secured by the Mortgage, whether with or without notice to Maker, and Maker shall continue to be liable to pay the amount due hereunder, but with interest at a rate no greater than the interest rate provided for herein, according to the terms of any such agreement of extension and modification.

This Note may not be changed, extended or modified nor may any term or provision hereof be waived, except by an instrument in writing by Maker and Payee.

In the event the indebtedness represented by this Note or any part thereof shall be collected at law or in equity, or in bankruptcy, receivership or any other court proceedings (whether at trial or at the appellate level) or in the event this Note shall be placed in the hands of attorneys for collection upon default, Maker shall pay, in addition to other items provided hereunder, all costs of collection or attempting to collect the amount of this Note, including reasonable and customary attorneys' fees and expenses, whether or not suit is filed.

The entire Principal Balance of this Note, together with all accrued and unpaid interest thereon and all other sums due under the Loan Documents, or any portion thereof, shall without notice become immediately due and payable at the option of Payee: (a) if any payment required in this Note is not paid prior to the fifth (5th) day after the date when due or on the Maturity Date; (b) upon the occurrence of any other default under this Note; or (c) upon the happening of any other Event of Default under and as defined in the Mortgage (each of the foregoing, an "Event of Default").

Notwithstanding anything contained herein to the contrary, it is understood and expressly agreed that Maker is fully liable for the repayment of the Debt, all interest and other charges thereon and all other obligations of Maker under this Note, the Mortgage and any other Loan Documents. Nothing herein shall be deemed to be a waiver of any right which Payee may have under Sections 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt secured by the Mortgage or to require that all collateral shall continue to secure all of the debt owing to Payee in accordance with this Note, the Mortgage, and any other loan document.

Maker represents that Maker has full power, authority and legal right to execute, deliver and perform its obligations pursuant to this Note, the Mortgage and the other Loan Documents and that this Note, the Mortgage and the other Loan Documents constitute valid and binding obligations of Maker.

Maker and all others who may become liable for the payment of all or any part of the Debt do hereby waive presentment and demand for payment, notice of dishonor, protest, notice of protest, notice of non-payment, and notice of intent to accelerate the maturity hereof and of acceleration.

It is expressly stipulated and agreed to be the intent of Maker and Payee at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Payee to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this paragraph shall control every other covenant and agreement in this Note and all the Loan Documents. If the applicable law (State or Federal) is ever judicially interpreted so as to render usurious any amount called for under this Note or under any of the Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Debt, or if Payee's exercise of the option to accelerate the maturity of this Note, or if any prepayment by Maker results in Maker having paid any interest in excess of that permitted by applicable law, then it is Maker's and Payee's express intent that all excess amounts theretofore collected by Payee shall be credited on the principal balance of this Note and all other Debt (or, if this Note and all other Debt have been or would thereby be paid in full, refunded to Maker), and the provisions of this Note and all of the Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Payee for the use, forbearance, or detention of the Debt shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Debt until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. Notwithstanding anything to the contrary contained herein or in any of the Loan Documents, it is not the intention of Payee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

Without the prior written consent of Payee, Maker shall not sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer, or permit the transfer of, directly or indirectly, the mortgaged property or ownership interests of

Maker, except as may be permitted in the Mortgage or another Loan Document.

Payee shall be entitled to assign all or any portion of its interest in this Note.

WAIVER OF JURY TRIAL. MAKER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE, THE MORTGAGE, OR ANY OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MAKER AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO TRIAL BY JURY WOULD OTHERWISE ACCRUE. PAYEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MAKER.

This Note has been delivered in, and shall be construed and enforced in accordance with, the laws of the State of New Jersey.

SIGNATURE PAGE TO FOLLOW

IN WITNESS WHEREOF, Maker has duly executed this Promissory Note as of the day and year first above written.

Johnston Holdings 1121 L.L.C.

By: _____

Vareena T Martin, Member

STATE OF New Jersey
COUNTY OF Passaic

I CERTIFY that on August 9, 2019, Vareena T Martinpersonally came before me and acknowledged under oath, to my satisfaction, that he/she was the maker of the attached instrument; was authorized to and did execute this instrument as Member of Johnston Holdings 1121 L.L.C., the entity named in this instrument; and executed this instrument as the act of the entity named in this instrument.

_____
Notary Public of the State of New Jersey

ALEXANDRA H. COOK
NOTARY PUBLIC OF NEW JERSEY
Comm. # 2385484
My Commission Expires 5/7/2024

POLSINELLI PC
Aaron P. Davis, Esq. (251102019)
600 Third Avenue, 40th Floor
New York, New York 10016
Phone: (212) 803.9918
adavis@polsinelli.com
*Attorneys for Plaintiff Normandy Capital Trust,*
*by and through its Trustee, Wilmington Savings*
*Fund Society, FSB*

| | |
|---|---|
| NORMANDY CAPITAL TRUST, by and through its Trustee, Wilmington Savings Fund Society, FSB,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSTON HOLDING 1121 LLC, a New Jersey limited liability company and ARYMING ASSET FUNDING, LLC, a New Jersey limited liability company,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: SOMERSET COUNTY<br><br>Docket No. SWC-F-005334-20<br><br>CIVIL ACTION<br><br>***FINAL JUDGMENT IN FORECLOSURE*** |

Upon the application to the Court by POLSINELLI PC, attorneys for plaintiff ("**Lender**"); and it appearing that the Summons and the Complaint in Foreclosure (the "**Complaint**") were duly issued and served upon defendants Johnston Holding 1121 LLC and Aryming Asset Funding, LLC (collectively "**Defendants**") in accordance with the Rules of this Court; and that Defendants have failed to file an answer to said Complaint or otherwise appear in this action and their time within which to do so has expired and has not been extended;

And it appearing that Lender's Note, Mortgage, and Assignment(s) have been presented and marked as Exhibits by the Court; and that proofs have been submitted of the amounts due on Lender's Note and its Mortgage; and that there is presently due and owing to Lender on the Note and the Mortgage more particularly described in the Complaint the aggregate sum of $1,090,427.49 as of June 15, 2021,

together with interest at the contract rate of 9.5% percent per annum on the principal balance of $891,230.00 from June 16, 2021, through the date of judgment on _____, 2021, and lawful interest thereafter on all sums due, together with costs to be taxed, including lawful counsel fees;

IT IS on this _____ day of _____ 2021,

ORDERED and ADJUDGED that Lender is entitled to have the sum of $1,090,427.49 as of June 15, 2021, plus interest from June 16, 2021, through the date of this judgment calculated at the contract rate of 9.50% percent per annum on the principal balance of $891,230.00, and lawful interest thereafter on the total sum due Plaintiff until the same be paid and satisfied, plus costs of this suit to be taxed, including attorneys' fees, all to be raised and paid on the first place out of the mortgaged premises and collateral; and it further

ORDERED and ADJUDGED that Lender, its successors and/or assigns or any purchaser at the foreclosure sale duly recover against Borrower, and all parties holding by, through or claiming under Borrower, possession of the premises and collateral mentioned and described in the Complaint with the appurtenances thereon and that a Writ of Possession issue thereon; and it is further

ORDERED and ADJUDGED that said mortgaged premises and collateral be sold to raise and satisfy the several sums due, in the first place, to Lender the sum of $1,090,427.49 as of June 15, 2021, plus interest and lawful interest thereafter to be computed as aforesaid, plus costs to be taxed, with lawful interest thereon, plus attorneys' fees; and that for that purpose an execution duly issue out of this Court, directed to the Sheriff of Somerset County, commanding him/her to make sale, according to law, of the said mortgaged premises and collateral and out of the monies arising from the sale, that the Sheriff pay in the first place to Lender $1,090,427.49, with interest thereon as aforesaid together with the costs of suit, including attorneys' fees, with interest thereon; and in case more money shall be realized by such sale than shall be necessary to satisfy such several payments as aforesaid, that such surplus shall be

2

brought into this Court and deposited with the Clerk to abide the further order of this Court and that the

Sheriff aforesaid make a report of the aforesaid sale without delays as required by the Rules of this Court;

and it is further

ORDERED and ADJUDGED that this judgment shall not affect the rights of any person protected

by the New Jersey Tenant Anti-Eviction Act (N.J.S.A. 2A:18-61.1 et seq.); and it is further

ORDERED and ADJUDGED that Borrower stands absolutely debarred and foreclosed of an from

all equity of redemption of, in and to said mortgaged premises and collateral described in the Complaint,

when sold aforesaid, by virtue of this judgment, except as provided by 28 U.S.C. Section 2410.

_____

J.S.C

78405936

POLSINELLI PC
Aaron P. Davis, Esq. (251102019)
600 Third Avenue, 40th Floor
New York, New York 10016
Phone: (212) 803.9918
adavis@polsinelli.com
*Attorneys for Plaintiff Normandy Capital Trust,*
*by and through its Trustee, Wilmington Savings*
*Fund Society, FSB*

| | |
|---|---|
| NORMANDY CAPITAL TRUST, by and through its Trustee, WILMINGTON SAVINGS FUND SOCIETY, FSB,<br><br>       Plaintiff,<br><br>   v.<br><br>JOHNSTON HOLDING 1121 LLC, a New Jersey Limited Liability Company, and ARYMING ASSET FUNDING, LLC, a New Jersey limited liability company,<br><br>       Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: SOMERSET COUNTY<br><br>Docket No. SWC-F-005334-20<br><br>CIVIL ACTION<br><br>***WRIT OF EXECUTION*** |

**THE STATE OF NEW JERSEY TO THE SHERIFF OF THE COUNTY OF ESSEX**

**GREETINGS:**

**WHEREAS**, on the ____ day of _____, 2021, by a certain judgment made in our Superior Court of New Jersey in a certain cause therein pending wherein Normandy Capital Trust, by and through its Trustee, Wilmington Savings Fund Society, FSB ("Plaintiff") is the plaintiff and Johnston Holdings 1121 LLC and Aryming Asset Funding, LLC ("Defendants") are the defendants, it was ordered and adjudged that certain mortgaged premises and collateral with the appurtenances particularly set forth and described in the Complaint in Foreclosure, that is to say: All that certain tract or parcel of land and premises, situate, lying and being in the City of

Watchung, County of Somerset and State of New Jersey as set forth on Exhibit A annexed hereto and made a part hereof together with all collateral as further set forth on Exhibit B;

    **TOGETHER** with all and singular the rights, liberties, privileges, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and remainders, rents, issues, and profits thereof, and also all the estate, right, title, interest, use, property, claim and demand of the said defendant of, in, to and out of the same, be sold to pay and satisfy in the first place unto the Plaintiff the total sum of $1,090,427.49 as of June 15, 2021, secured by a certain mortgage given by Defendant Johnston, bearing the date of August 9, 2019, together with interest at the contract rate of 9.50% percent per annum on the sum of $891,230.00 representing the mortgage principal, from June 16, 2021, through the date of this judgment on _____, 2021, and lawful interest thereafter on all sums due to Plaintiff until the same be paid and satisfied, and also the costs of the aforesaid Plaintiff, with lawful interest thereon; AND that, for that purpose, a writ of execution should issue, directed to the Sheriff of the County of Somerset commanding him/her to make sale as aforesaid, and that the surplus money arising from such sale, if any there be, should be brought into said Court and deposited with the Clerk, subject to the further order of the said Court as by the said judgment remaining as of record in our said Superior Court of New Jersey, at Trenton, doth and may more fully appear; and

    **WHEREAS**, the costs of the said Plaintiff have been duly taxed in the aggregate amount of _____;

    **THEREFORE,** you are hereby commanded that you cause a sale to be made of the premises and collateral, by selling so much of the same as may be needful and necessary for the purpose, to raise for the Plaintiff the said sum of $1,090,427.49 as of June 15, 2021, together with contract interest and lawful interest thereafter to be computed as aforesaid, and the Plaintiff's costs

to be taxed with lawful interest thereon as aforesaid, and that you pay said amounts to the Plaintiff;

and that you have the surplus money, if any there be, before the said Superior Court of New Jersey

aforesaid at Trenton, within thirty (30) days after the sale, to abide the further order of the said

Court, according to the judgment aforesaid; and you are to make return at the time and place

aforesaid, by certificate under your hand, of the manner in which you have executed this our writ,

together with this writ. If there is no sale, the writ shall be returnable within twenty-four months

in accordance with R. 4:59-1.

      **WITNESS** the Honorable _____, P.J.Ch., a Judge of the

Superior Court of New Jersey, at Trenton, New Jersey aforesaid, the  _____ day of

 _____, 2021.


POLSINELLI PC

*Attorneys for Plaintiff*

By:  ___*Aaron P. Davis*_____          _____
       Aaron P. Davis                                       Michelle M. Smith
                                        Clerk of the Superior Court

## EXHIBIT A

Legal Description

ALL that certain lot, parcel or tract of land, situate and lying in the Borough of Watchung, County of Somerset, State of New Jersey, and being more particularly described as follows:

BEGINNING at a point at the intersection of the center line of Johnston Drive and the easterly side line of the Public Service Electric and Gas Company transmission line and running from, thence

(1) North 31 degrees 26 minutes 00 seconds West, a distance of 632.54 feet; thence
(2) North 43 degrees 25 minutes 00 seconds East, a distance of 122.25 feet; thence
(3) South 31 degrees 26 minutes 00 seconds East, a distance of 699.98 feet to a point in the northerly line of Johnston Drive; thence
(4) Along same, South 80 degrees 35 minutes 00 seconds West, a distance of 88.13 feet, thence
(5) Continuing along same, South 62 degrees 26 minutes 00 seconds West, a distance of 36.38 feet to the point and place of BEGINNING

## EXHIBIT B

Collateral Description

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

SNCO-076

## ALLONGE

ALLONGE TO NOTES(S) ATTACHED HERETO AND MADE A PART HEREOF.

Pay to the order of **Normandy Capital Trust, a Delaware Statutory Trust,** without recourse.

Dated: August 28, 2019

SNCO CAP LLC

By: _____

Name: Pinky Schwartz
Title: Authorized Signatory

Record & Return to:
SNCO CAP LLC
40 Penn Street, #207
Brooklyn, NY 11249
ATTN: Post-Closing (SNCO-**076**)

## ASSIGNMENT OF MORTGAGE

KNOW THAT **SNCO CAP LLC,** a limited liability company organized under the laws of New York, having an office at 40 Penn Street, #207, Brooklyn, NY, 11249 ("Assignor") in consideration of Ten ($10.00) or more Dollars, paid by **Normandy Capital Trust, a Delaware Statutory Trust** having an office at 15 Maple Street, Second Floor West, Summit NJ 07901 ("Assignee"), hereby assigns, sells, transfers and delivers unto Assignee, that certain Mortgage described as:

Mortgage in the amount of $981,500 made by Johnston Holdings 1121 L.L.C. to SNCO CAP LLC, dated 8/9/2019 and recorded on _____ in _____ in the office of the Register of Somerset County, NJ,  together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

Which Mortgage covers the premises commonly known as 1121 Johnston Drive, Watchung, NJ designated on the official tax map of the County of Somerset as Block 7403 Lot(s) 2 (the "Premises").

**TOGETHER** with the bonds, notes or other obligations described in said mortgages, and the monies due and to grow thereon with interest;

**TO HAVE AND TO HOLD** the same unto the Assignee and to the successors, legal representatives and assigns forever.

The Mortgage(s) assigned hereby has not been further assigned except as set forth herein.

**IN WITNESS WHEREOF**, the Assignor has duly executed this assignment as of the 28th day of August, 2019.

**ASSIGNOR:**

SNCO CAP LLC

By:

Name:  Pinky Schwartz
Title:   Authorized Signatory

STATE OF NEW YORK              )

COUNTY OF NEW YORK            )

   On the 28th day of August, 2019, before me, the undersigned, a Notary Public in and for the State, personally appeared **Pinky Schwartz**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

Notary Public

LAUDY RODRIGUEZ
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01RO6390562
Qualified in Bronx County
My Commission Expires: 4-15-23

Record & Return to:
SNCO CAP LLC
40 Penn Street, #207
Brooklyn, NY 11249
ATTN: Post-Closing (SNCO-**076**)

### ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS

KNOW THAT, **SNCO CAP LLC**, a limited liability company organized under the laws of New York, having an office at 40 Penn Street, #207, Brooklyn, NY, 11249  ("Assignor"), in consideration of Ten ($10.00) or more Dollars, paid by **Normandy Capital Trust, a Delaware Statutory Trust** having an office at 15 Maple Street, Second Floor West, Summit NJ 07901 ("Assignee"), hereby assigns unto the assignee, without recourse to the Assignor in any event, all of its right, title and interest in and to that certain Assignment of Leases and Rents made by Johnston Holdings 1121 L.L.C. to Assignor dated 8/9/2019 and recorded _____ in _____, and affecting the premises known as 1121 Johnston Drive, Watchung, NJ designated on the official tax map of the County of Somerset as Block 7403 Lot(s) 2.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment as of the 28th day of August, 2019.

ASSIGNOR:

SNCO CAP LLC

By: _____
Name:  Pinky Schwartz
Title:  Authorized Signatory


STATE OF NEW YORK          )

COUNTY OF NEW YORK       )

On the 28th day of August, 2019, before me, the undersigned, a Notary Public in and for the State, personally appeared **Pinky Schwartz**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

LAUDY RODRIGUEZ
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01RO6390562
Qualified in Bronx County
My Commission Expires: 4-5-23

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

SNCO Cap LLC
40 Penn Street
Brooklyn, NY 11249

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Johnston Holdings 1121 L.L.C. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1121 Johnston Drive, | Watchung | NJ | 07069 | USA |

| 1d. SEE INSTRUCTIONS | ADD'TL INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL I.D.#, if any |
|---|---|---|---|---|
| | | Limited Liability Company | New Jersey | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b) – do not combine or abbreviate names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'TL INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL I.D.#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SNCO Cap LLC | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 40 Penn Street | Brooklyn | NY | 11249 | USA |

4. This FINANCING STATEMENT covers the following collateral:

This financing Statement evidences and secures the SECURITY AGREEMENT between the debtor and the secured party in connection with the premises known as and by

1121 Johnston Drive, Watchung, New Jersey 07069
Section:
Block: 7403
Lot: 2
Somerset County, State of New Jersey

See Exhibit "A" annexed hereto.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable) | 7. Check to REQUEST SEARCH REPORT(s) on Debtor(s) (ADDITIONAL FEE) (optional) | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
File in Somerset County, State of New Jersey

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV.05/22/02)

<u>EXHIBIT A</u>

Financing Statement between SNCO Cap LLC, as Secured Party, and, as Debtor.

This financing statement covers the real property located at **1121 Johnston Drive, Watchung, New Jersey 07069 Section:  Block: 7403 Lot: 2, Sumerset County** (the "**Real Property**") together with all property rights, interests and estates now owned, or hereafter acquired by Debtor in and to the following (collectively called the "**Property**"):

        (a)    all buildings and other improvements now or hereafter located on the Real Property ("**Improvements**");

        (b)    all streets, lanes, alleys, passages, ways, water courses, easements, rights, liberties, privileges, tenements, hereditaments and appurtenances whatsoever thereunto belonging to or in any way made appurtenant hereafter, and the reversions and remainder, with respect thereto ("**Appurtenances**");

        (c)    all machinery, apparatus, equipment, furniture, furnishings, fixtures, inventory, goods, appliances, and other property of every kind and nature whatsoever, together with replacements thereof and accessories, parts or accessions thereto, owned by Borrower or in which Borrower has or shall have an interest, and whether or not now or hereafter located on the Real Property, and any and all proceeds of any of the foregoing ("**Equipment**");

        (d)    all building materials, building machinery and building equipment delivered on site to the Real Property during the course of, or in connection with, the construction of, or reconstruction of, or remodeling of any building and improvements from time to time during the term of this Mortgage ("**Building Equipment**");

        (e)    all general intangibles relating to the development or use of the Real Property, including, but not limited to, all licenses, permits and agreements from or with all boards, agencies, departments, public utilities, governmental or otherwise, all names under which or by which the Real Property or Improvements may at any time be operated or known and all rights to carry on business under any such names or any variations thereof, all trademarks and goodwill in any way relating to the Real Property, all shares of stock or other evidence of ownership of any part of the Real Property owned by Borrower in common with others, and all documents of membership in any owners or members association or similar group having responsibility for managing or operating any portion or all of the Real Property ("**Intangibles**");

        (f)    all awards or payments, including interest thereon, which may be made with respect to the Real Property and Improvements, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the Real Property or Improvements including, without limitation, all awards or payments of estimated compensation, all damages to the Real Property or Improvements resulting from any taking, all machinery and equipment dislocation expenses, all settlement amounts, all apportionments of taxes, reimbursement of attorneys and engineers fees, all moving expenses and all business dislocation expenses ("**Awards**");

        (g)    all insurance policies covering the Real Property or Improvements and all proceeds of any unearned premiums on any such insurance policies including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Real Property or Improvements ("**Insurance Policies**");

        (h)    all leases, agreements of sale and other agreements affecting the use or occupancy of any portion or all of the Real Property or Improvements, whether heretofore or hereafter executed and all rights to payment under any such lease or agreement ("**Leases and Agreements**");

(i) all rents, receipts, issues, profits and other income of any and all kinds (including deposits) received or receivable and due or to become due from the sale or lease of any property, goods or materials or from the rendering of services including, but not limited to (i) the lease or sale of all or a portion of the Real Property or Improvements, or (ii) the operation of any income producing facility on the Real Property or Improvements (all of such proceeds, receipts and income are hereinafter referred to as the "**Income and Rents**" and all such rights are hereinafter referred to as the "**Accounts Receivable**");

(j)   any securities or guaranties held by Borrower with respect to any of the Intangibles, Awards, Leases or Accounts Receivable, and any notes, drafts, acceptances, chattel paper, documents, or other instruments evidencing the same ("**Securities**");

(k)   all plans and specifications prepared for renovations to or construction of the Improvements and all studies, data and drawings related thereto; and also all contracts and agreements relating to the aforesaid plans and specifications or to the aforesaid studies, data and drawings, or to the renovations to or construction of Improvements ("**Plans**");

(l)   the right, in the name and on behalf of itself or Borrower, to appear in or defend any action or proceeding brought with respect to the Real Property or Improvements (including without limitation, any condemnation or arbitration proceedings) and to commence any action or proceedings to protect the interest of Lender in the Real Property and Improvements;

(m)   all refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction of taxes;

(n)   all proceeds of any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether cash, liquidation or other claims or otherwise; and

(o)   any and all other rights of Borrower in and to the items set forth in Subsections (a) through (n) above.

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

SNCO Cap LLC
40 Penn Street
Brooklyn, NY 11249

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Johnston Holdings 1121 L.L.C. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1121 Johnston Drive, Watchung, New Jersey 07069 | Watchung | NJ | 07069 | USA |

| 1d. SEE INSTRUCTIONS | ADD'TL INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Limited Liability Company | 1f. JURISDICTION OF ORGANIZATION New Jersey | 1g. ORGANIZATIONAL I.D.#, if any | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – insert only one debtor name (2a or 2b) – do not combine or abbreviate names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'TL INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL I.D.#, if any | ☐ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SNCO Cap LLC | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 40 Penn Street | Brooklyn | NY | 11249 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

This financing Statement evidences and secures the SECURITY AGREEMENT between the debtor and the secured party in connection with the premises known as and by

1121 Johnston Drive, Watchung, New Jersey 07069
Section:
Block: 7403
Lot:   2
Somerset County, State of New Jersey

See Exhibit "A" annexed hereto.

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum | 7. Check to REQUEST SEARCH REPORT(s) on Debtor(s) (ADDITIONAL FEE) (optional) | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
File State of New Jersey

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV05/22/02)

## EXHIBIT A

Financing Statement between SNCO Cap LLC, as Secured Party, and, as Debtor.

This financing statement covers the real property located at **1121 Johnston Drive, Watchung, New Jersey 07069 Section: Block: 7403 Lot: 2, Sumerset County** (the "**Real Property**") together with all property rights, interests and estates now owned, or hereafter acquired by Debtor in and to the following (collectively called the "**Property**"):

(a)     all buildings and other improvements now or hereafter located on the Real Property ("**Improvements**");

(b)     all streets, lanes, alleys, passages, ways, water courses, easements, rights, liberties, privileges, tenements, hereditaments and appurtenances whatsoever thereunto belonging to or in any way made appurtenant hereafter, and the reversions and remainder, with respect thereto ("**Appurtenances**");

(c)     all machinery, apparatus, equipment, furniture, furnishings, fixtures, inventory, goods, appliances, and other property of every kind and nature whatsoever, together with replacements thereof and accessories, parts or accessions thereto, owned by Borrower or in which Borrower has or shall have an interest, and whether or not now or hereafter located on the Real Property, and any and all proceeds of any of the foregoing ("**Equipment**");

(d)     all building materials, building machinery and building equipment delivered on site to the Real Property during the course of, or in connection with, the construction of, or reconstruction of, or remodeling of any building and improvements from time to time during the term of this Mortgage ("**Building Equipment**");

(e)     all general intangibles relating to the development or use of the Real Property, including, but not limited to, all licenses, permits and agreements from or with all boards, agencies, departments, public utilities, governmental or otherwise, all names under which or by which the Real Property or Improvements may at any time be operated or known and all rights to carry on business under any such names or any variations thereof, all trademarks and goodwill in any way relating to the Real Property, all shares of stock or other evidence of ownership of any part of the Real Property owned by Borrower in common with others, and all documents of membership in any owners or members association or similar group having responsibility for managing or operating any portion or all of the Real Property ("**Intangibles**");

(f)     all awards or payments, including interest thereon, which may be made with respect to the Real Property and Improvements, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the Real Property or Improvements including, without limitation, all awards or payments of estimated compensation, all damages to the Real Property or Improvements resulting from any taking, all machinery and equipment dislocation expenses, all settlement amounts, all apportionments of taxes, reimbursement of attorneys and engineers fees, all moving expenses and all business dislocation expenses ("**Awards**");

(g)     all insurance policies covering the Real Property or Improvements and all proceeds of any unearned premiums on any such insurance policies including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Real Property or Improvements ("**Insurance Policies**");

(h)     all leases, agreements of sale and other agreements affecting the use or occupancy of any portion or all of the Real Property or Improvements, whether heretofore or hereafter executed and all rights to payment under any such lease or agreement ("**Leases and Agreements**");

POLSINELLI PC
Aaron P. Davis, Esq. (251102019)
600 Third Avenue, 40th Floor
New York, New York 10016
Phone: (212) 803.9913
adavis@polsinelli.com

*Attorneys for Plaintiff Normandy Capital Trust,*
*by and through its Trustee, Wilmington Savings*
*Fund Society, FSB*

|  |  |
|---|---|
| NORMANDY CAPITAL TRUST, by and through its Trustee, WILMINGTON SAVINGS FUND SOCIETY, FSB,<br><br>                 Plaintiff,<br><br>      v.<br><br>JOHNSTON HOLDING 1121 LLC, a New Jersey limited liability company and ARYMING ASSET FUNDING, LLC, a New Jersey limited liability company,<br><br>             Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: SOMERSET COUNTY<br><br>Docket No. SWC-F-005334-20<br><br>       CIVIL ACTION<br><br>   ***CERTIFICATION OF SERVICE*** |

     I, AARON P. DAVIS, ESQ., of full age, do hereby certify and say:

     1.     I am an attorney duly admitted to practice law in the State of New Jersey and an associate with the firm Polsinelli PC, attorneys for plaintiff Normandy Capital Trust, by and through its Trustee, Wilmington Savings Fund Society, FSB ("Plaintiff").  I am responsible for litigating the above-captioned action on Plaintiff's behalf and have personal knowledge of the facts set forth herein. I am authorized to make the instant Certification on Plaintiff's behalf in this case.

     2.     On June 24, 2021, I caused to be delivered a copy of the Request for Entry of Default, which was filed in this action on June 24, 2021, on defendants Johnston Holdings 1121

LLC and Aryming Asset Funding, LLC via Certified Mail, Return Receipt Requested and Regular

Mail, to Defendant at the following address:

> Johnston Holdings 1121 LLC
> 1121 Johnston Drive
> Watchung, New Jersey 07069
>
> Aryming Asset Funding, LLC
> 24 Commerce Street, Suite 606
> Newark, New Jersey 07102

I certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.


> *Aaron P. Davis*
> AARON P. DAVIS


Dated: June 24, 2021

**Exhibit 2**

Final Judgment

POLSINELLI PC
Aaron P. Davis, Esq. (251102019)
600 Third Avenue, 40th Floor
New York, New York 10016
Phone: (212) 803.9918
adavis@polsinelli.com
*Attorneys for Plaintiff Normandy Capital Trust,*
*by and through its Trustee, Wilmington Savings*
*Fund Society, FSB*

| | |
|---|---|
| NORMANDY CAPITAL TRUST, by and through its Trustee, Wilmington Savings Fund Society, FSB,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSTON HOLDING 1121 LLC, a New Jersey limited liability company and ARYMING ASSET FUNDING, LLC, a New Jersey limited liability company,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: SOMERSET COUNTY<br><br>Docket No. SWC-F-005334-20<br><br>CIVIL ACTION<br><br>***FINAL JUDGMENT IN FORECLOSURE*** |

Upon the application to the Court by POLSINELLI PC, attorneys for plaintiff ("**Lender**"); and it appearing that the Summons and the Complaint in Foreclosure (the "**Complaint**") were duly issued and served upon defendants Johnston Holding 1121 LLC and Aryming Asset Funding, LLC (collectively "**Defendants**") in accordance with the Rules of this Court; and that Defendants have failed to file an answer to said Complaint or otherwise appear in this action and their time within which to do so has expired and has not been extended;

And it appearing that Lender's Note, Mortgage, and Assignment(s) have been presented and marked as Exhibits by the Court; and that proofs have been submitted of the amounts due on Lender's Note and its Mortgage; and that there is presently due and owing to Lender on the Note and the Mortgage more particularly described in the Complaint the aggregate sum of $1,090,427.49 as of June 15, 2021,

together with interest at the contract rate of 9.5% percent per annum on the principal balance of $891,230.00 from June 16, 2021, through the date of judgment on ___7/19/21_____, and lawful interest thereafter on all sums due, together with costs to be taxed, including lawful counsel fees;

IT IS on this __19____ day of ____JULY____2021,

ORDERED and ADJUDGED that Lender is entitled to have the sum of $1,090,427.49 as of June 15, 2021, plus interest from June 16, 2021, through the date of this judgment calculated at the contract rate of 9.50% percent per annum on the principal balance of $891,230.00, and lawful interest thereafter on the total sum due Plaintiff until the same be paid and satisfied, plus costs of this suit to be taxed, including attorneys' fees IN THE AMOUNT OF $7500, all to be raised and paid on the first place out of the mortgaged premises and collateral; and it further

ORDERED and ADJUDGED that Lender, its successors and/or assigns or any purchaser at the foreclosure sale duly recover against Borrower, and all parties holding by, through or claiming under Borrower, possession of the premises and collateral mentioned and described in the Complaint with the appurtenances thereon and that a Writ of Possession issue thereon; and it is further

ORDERED and ADJUDGED that said mortgaged premises and collateral be sold to raise and satisfy the several sums due, in the first place, to Lender the sum of $1,090,427.49 as of June 15, 2021, plus interest and lawful interest thereafter to be computed as aforesaid, plus costs to be taxed, with lawful interest thereon, plus attorneys' fees; and that for that purpose an execution duly issue out of this Court, directed to the Sheriff of Somerset County, commanding him/her to make sale, according to law, of the said mortgaged premises and collateral and out of the monies arising from the sale, that the Sheriff pay in the first place to Lender $1,090,427.49, with interest thereon as aforesaid together with the costs of suit, including attorneys' fees, with interest thereon; and in case more money shall be realized by such sale than shall be necessary to satisfy such several payments as aforesaid, that such surplus shall be

brought into this Court and deposited with the Clerk to abide the further order of this Court and that the

Sheriff aforesaid make a report of the aforesaid sale without delays as required by the Rules of this Court;

and it is further

ORDERED and ADJUDGED that this judgment shall not affect the rights of any person protected

by the New Jersey Tenant Anti-Eviction Act (N.J.S.A. 2A:18-61.1 et seq.); and it is further

ORDERED and ADJUDGED that Borrower stands absolutely debarred and foreclosed of an from

all equity of redemption of, in and to said mortgaged premises and collateral described in the Complaint,

when sold aforesaid, by virtue of this judgment, except as provided by 28 U.S.C. Section 2410.


*/s/ Margaret Goodzeit, P.J.Ch.*
Hon. Margaret Goodzeit, P.J.Ch.


Respectfully Recommended
R.1:34-6 Office of Foreclosure

**3**

78405936